UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PHILIP GREEN, on behalf of himself and all others similarly situated, | Civil Action No. 11-2067 (SDW)(MCA) |
| Plaintiffs, | **OPINION** |
| v. |  |
| GREEN MOUNTAIN COFFEE ROASTERS, INC., and KEURIG, INC., | December 20, 2011 |
| Defendants. |  |

**WIGENTON**, District Judge.

Before the Court is Green Mountain Coffee Roasters, Inc., and Keurig, Inc.'s, (collectively "Defendants") Motion to Dismiss Plaintiff Philip Green's ("Plaintiff" or "Green") individual claims and class action allegations pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted ("Motions"). This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d). Venue is proper in this District pursuant to 28 U.S.C. § 1391. These Motions are decided without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons stated below, this Court grants Defendants' Motions.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendants are "in the specialty coffee and coffee maker businesses." (Compl. ¶ 12.) They manufacture "single-cup brewers, accessories and coffee, tea, cocoa and other beverages in K-Cup portion packs." (Id. ¶ 16.) In addition to manufacturing, Defendants also market and sell their products "in domestic wholesale and retail channels, [supermarkets], and directly to consumers." (Id. ¶¶ 15, 21.) At the heart of this lawsuit are the following single-cup brewing

systems Defendants manufacture and sell: Keurig® Platinum Brewing System (model series B70), Keurig Special Edition Brewing System (model series B60), Keurig Elite Brewing System (model series B40), Keurig B155 Brewing System, Keurig OfficePRO™ Brewing System, Keurig MINI Plus Brewing System (model series B31), Keurig B130 In-Room Brewing System, Keurig B150 Brewing System, Keurig BI40 Brewing System, Breville Brewing System with Keurig Brewed® Technology, Cuisinart® Brewing System with Keurig Brewed Technology, Mr. Coffee® Brewing System with Keurig Brewed Technology, and the Keurig B200 Brewing System (collectively the "Keurig Brewing Systems").  (Id. ¶ 1.)

According to Green, Defendants advertised on their websites and the brewers' packaging that "one K-Cup would brew a programmed quantity of coffee."  (Id. ¶ 8; see also id. ¶¶ 22-27.)  Based on these representations, Plaintiff asserts that he purchased a Keurig® Platinum Brewing System (model series B70) in or around January 2011.  (Id. ¶ 8.)  However, Green maintains that his machine failed to brew the programmed amounts of K-Cup® coffee within a few weeks of use.  (Id.)  Plaintiff asserts that the machines had "defective components, including defective pumps."  (Id. ¶ 28.)  As a result, the machines failed and brewed less than the specified amount.  (Id.)  Furthermore, this defect allegedly caused "consumers to use additional K-Cups® to brew a single beverage."  (Id. ¶ 2.)  Green submits that other consumers complained to Defendants about the defective machines and Defendants were aware that the brewing machines were defective.  (Id. ¶¶ 29, 45.)

Defendants provide a one-year no-cost limited warranty for the Keurig Brewing Systems that allows Defendants, at their option, to repair or replace the machine.  The warranty provides in relevant part:

> Keurig warrants that your Keurig Home Brewer will be free of defects in materials or workmanship under normal home use for

2

<sub>         </sub>one year from the date of purchase. Keurig will, at its option, repair or replace the Brewer without charge upon its receipt of proof of the date of purchase. If a replacement Brewer is necessary to service this warranty, the replacement Brewer may be new or reconditioned. If a replacement Brewer is sent, it will carry a One Year Warranty from the date of shipment. Keurig will cover all shipping costs for authorized returns.

(Defs.' Br. Ex. A.)[1]

Nonetheless, Plaintiff has not taken advantage of the warranty. According to Green, other consumers who were serviced under the warranty had their machines "replaced with unused, but equally defective" machines. (Compl. ¶ 4.)

Consequently, on April 11, 2011, Green initiated this action on behalf of himself and others in the State of New Jersey who "purchased or received" Keurig Brewing Systems from February 18, 2008 to the present. (Id. ¶ 58, Pl.'s Opp'n Br. 1 n.2.)[2] Plaintiff maintains that Defendants' actions are in violation of the New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. Ann. § 56:8-1, et seq., and constitute a breach of implied warranty and unjust enrichment.

**LEGAL STANDARD**

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." See also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief"). In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "'accept all

---

[1] Although the general rule is that "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings[,] . . . an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (alteration in original) (internal quotation marks and citations omitted).
[2] Initially, Green sought a nationwide class certification; however, he narrowed the class to New Jersey purchasers following the Supreme Court's decision in Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011). In light of Plaintiff's limitation of the definition of the putative class to "purchasers only from the State of New Jersey," (Pl.'s Opp'n Br. 1 n.2), this Court will not engage in a choice of law analysis.

factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips, 515 F.3d at 231 (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)) ("Twombly"). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). Iqbal, 129 S. Ct. at 1950 (internal quotation marks omitted). According to the Supreme Court in Twombly, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his[or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (internal citations omitted). Furthermore, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. The Third Circuit summarized the Twombly pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

Moreover, Fed. R. Civ. P. 9(b)'s pleading requirements apply to CFA claims. See, eg., Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

4

DISCUSSION

1. Standing

Pursuant to Article III of the United States Constitution, the Court may exercise jurisdiction only where there is an actual case or controversy. Golden v. Zwickler, 394 U.S. 103, 108 (1969). Standing is a "threshold question," Warth v. Seldin, 422 U.S. 490, 498 (1975), and "[t]he party invoking federal jurisdiction bears the burden" of proof. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). To meet this burden, "the irreducible constitutional minimum of standing" involving three elements must be established. Id. at 560.

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Id. at 560-61 (alterations in original) (internal quotation marks and citations omitted).

Although all three elements have to be met, "the injury-in-fact element is often determinative." Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 138 (3d Cir. 2009). Most importantly, "the injury must affect the plaintiff in a personal and individual way." Luan, 504 U.S. at 561 n.1. Additionally, "[i]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." Powers v. Ohio, 499 U.S. 400, 410 (1991) (citations omitted). Moreover, "'[t]he standing inquiry does not change in the context of a putative class action. . . . [S]tanding cannot be predicated on an injury which the plaintiff has not suffered, nor can it be acquired through the back door of a class action.'" Koronthaly v. L'Oreal USA, Inc., Civ. A. No. 07-5588, 2008 U.S.

5

Dist. LEXIS 59024, at *13 (D.N.J. July 29, 2008), aff'd, 374 F. App'x 257 (3d Cir. 2010) (quoting In re Franklin Mut. Funds Litigation, 388 F. Supp. 2d 451, 461 (D.N.J. 2005)). "[A] plaintiff in a class action must show that she has personally been injured; indeed, the class plaintiff cannot rely on 'injuries suffered by other, unidentified members of the class.'" Lieberson v. Johnson & Johnson Consumer Cos., Civ. A. No. 10-6196, 2011 U.S. Dist. LEXIS 107596, at *14 (D.N.J. Sept. 21, 2011) (quoting Lewis v. Casey, 518 U.S. 343, 357 (1996)).

In this case, Green alleges that he purchased and used the Keurig® Platinum Brewing System (model series B70). (Compl. ¶ 8.) Nevertheless, he seeks to represent all individuals in New Jersey who "purchased or received" Keurig Brewing Systems. (Id. ¶ 58; Pl.'s Opp'n Br. 1 n.2.) Plaintiff does not have "standing to pursue a claim that products []he neither purchased nor used did not work as advertised." Lieberson, 2011 U.S. Dist. LEXIS 107596, at *13-14. Consequently, the Court will only consider Plaintiff's allegations pertaining to the model series B70. Green's claims relating to the other brewing systems are dismissed.

    **2. Individual Claims**

        a. CFA

The CFA, which affords private citizens with a cause of action under limited circumstances, provides in relevant part: "Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act . . . may bring an action . . . in any court of competent jurisdiction." N.J. Stat. Ann. § 56:8-19. To state a private cause of action under the CFA, "a plaintiff must allege each of three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." N.J. Citizen

Action v. Schering-Plough Corp., 367 N.J. Super. 8, 12-13 (App. Div. 2003), certif. denied, 178 N.J. 249 (2003) (citing Cox v. Sears Roebuck & Co., 138 N.J. 2, 24 (1994)).  There are three categories of unlawful conduct under the CFA: "(1) affirmative acts, *i.e.*, misrepresentations; (2) omissions; and (3) regulatory violations."  Hughes v. Panasonic Consumer Elecs. Co., Civ. A. No. 10-846, 2011 U.S. Dist. LEXIS 79504, at *31 (D.N.J. July 21, 2011) (citing Solo v. Bed Bath & Beyond, Inc., Civ. No. 06-1908, 2007 U.S. Dist. LEXIS 31088, at *2 (D.N.J. Apr. 26, 2007); Cox, 138 N.J. at 17).

Green argues that Defendants' conduct was unlawful because they misrepresented the amount of beverage the machine would brew.[3]  It appears that Plaintiff has adequately pled unlawful conduct.  However, Defendants maintain that even if their conduct was unlawful, Plaintiff has not sufficiently pled ascertainable loss.  This Court agrees.

In a misrepresentation case, a plaintiff may show ascertainable loss by "either out-of-pocket loss or a demonstration of loss in value."  Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 248 (2005) (citing Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 13 (2004)).  An actionable loss is not "hypothetical or illusory."  Thiedemann, 183 N.J. at 248.  In this case, Green has not alleged that he has made a claim for warranty repair or replacement of his machine.  As the Thiedemann Court stated, "the warranty provided as part of the contract of sale or lease is part of the benefit of the bargain between the parties.  The defects that arise and are addressed by warranty, at no cost to the consumer, do not provide the predicate 'loss' that the CFA expressly requires for a private claim under the CFA."  Thiedemann, 183 N.J. at 251; see also Smajlaj v. Campbell Soup Co., 782 F. Supp. 2d 84, 99 (D.N.J. 2011) ("A consumer who expects a [product] that never requires resort to its comprehensive warranty . . . has not

---

[3] Plaintiff states that he is not pursing an omission claim.  (Pl.'s Opp'n Br. 9 n.9.)  Consequently, he did not need to plead intent.  Cox, 138 N.J. at 18.

experienced a loss when that expectation is not met.") (citations omitted); Larkey v. Bless, No. A-1620-10T2, 2011 N.J. Super. Unpub. LEXIS 2681, at *12 (App. Div. Oct. 27, 2011) (concluding that plaintiff had no ascertainable loss because the defect was addressed by a warranty).  Cf. Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 559-60 (2009) (holding that a consumer need not make a pre-suit demand for a refund before filing a CFA claim; but distinguishing Thiedemann and noting that the present case did not involve a defect that could be remedied through a warranty or other alternate form of relief).  Because Plaintiff has not availed himself of Defendants' warranty he cannot allege that the warranty does not address the defect in his machine.

Furthermore, this Court finds unpersuasive Plaintiff's argument that Defendants' warranty did not address the defects in the brewers because other consumers reported that their replaced or repaired brewers were equally defective.  (Compl. ¶¶ 33-44; Pl.'s Opp'n Br. 20.) "[A]llegations regarding the experience of members of the putative class, in general, cannot fulfill the requirement of pleading with adequate specificity."  Luppino v. Mercedes-Benz USA, LLC, Civ. No. 09-5582, 2010 U.S. Dist. LEXIS 83584, at *14 (D.N.J. Aug. 13, 2010); see also Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 659 (3d Cir. 1998) ("Until the putative class is certified, the action is one between . . . [the plaintiff] and the defendants.  Accordingly the . . . Complaint must be evaluated as to the[] particular plaintiff[].").

Nevertheless, Plaintiff, relying on Asp v. Toshiba Am. Consumer Prods., LLC, 616 F. Supp. 2d 721 (S.D. Ohio 2008), maintains that he is not required to avail himself of Defendants' warranty prior to filing suit.  (Pl.'s Opp'n Br. 15.)  This Court finds the Asp Court's interpretation of Thiedemann unpersuasive and at odds with the Thiedemann Court's reasoning. In Asp, the plaintiff filed a class action against the defendant, alleging that a digital video

8

recorder ("DVR") he purchased from a retailer malfunctioned within days of purchase. The plaintiff's DVR came with a limited warranty that required the defendant to repair or replace the defective DVR at no cost to the consumer. Rather than take advantage of the limited warranty, the plaintiff brought suit, claiming that the defendant violated the CFA. Asp, 616 F. Supp. 2d at 724-26. The defendant, relying on Thiedemann, maintained that the plaintiff failed to allege an ascertainable loss because he failed to take advantage of the limited warranty. The Asp Court found that Thiedemann only applied to situations where "the defect had been fixed, replaced, or otherwise 'addressed'" by the warranty in question. Id. at 737. Consequently, the court held that a plaintiff may have an ascertainable loss "without first giving the seller an opportunity to repair or replace under a limited warranty." Id. at 738.

However, there is no such limiting language in Thiedemann. A careful reading of Thiedemann suggests that merchants should be given the opportunity to repair or replace a defect. For instance, the court acknowledged that the defendant's argument that the "CFA implicitly encourages merchants . . . to initiate pro-consumer warranty programs by rewarding those companies with the benefit of avoiding CFA exposure for claims brought by individuals who do not incur an out-of-pocket loss" was the "better . . . argument[]." Thiedemann, 183 N.J. at 250-51. Additionally, as the court stated, "[t]he mere fact that [a] . . . defect arises does not establish, in and of itself, an actual and ascertainable loss to the [] purchaser. Indeed, the warranty provided as part of the contract of sale or lease is part of the benefit of the bargain between the parties." Id. at 251. According to the New Jersey Supreme Court, an ascertainable loss is roughly equivalent to "any lost 'benefit of [the] bargain.'" Bosland, 197 N.J. at 558

(alteration in original) (quoting Furst, 182 N.J. at 11-13). Consequently, there is no lost benefit of the bargain in this case if a warranty is provided that addresses the defect in question.[4]

Moreover, Plaintiff has not sufficiently pled loss in value. "Under the CFA, Plaintiff is required to plead specific facts setting forth and defining the ascertainable loss suffered." Solo, 2007 U.S. Dist. LEXIS 31088, at *10 (citing Cox, 138 N.J. at 21; Dabush v. Mercedes-Benz USA, LLC, 378 N.J. Super. 105, 116 (App. Div. 2005)). Plaintiff broadly asserts that he has suffered a loss because "[e]ach brewer failed to perform its advertised purpose and caused purchasers to suffer a complete loss of value of the product." (Pl.'s Opp'n Br. 12.) Green fails to allege how much he paid for his brewer and how much other comparable brewers manufactured by Defendants' competitors cost at the time of purchase. See Hemy v. Purdue Farms, Inc., Civ. A. No. 11-888, 2011 U.S. Dist. LEXIS 137923, *53-54 (D.N.J. Nov. 30, 2011) (concluding that plaintiffs have failed to allege ascertainable loss because "they do not set out the difference in value between the promised product . . . and the actual product received"). Stated differently, "Plaintiff fail[ed] to specifically allege that what he did receive[] was of lesser value than what was promised . . . ." Solo, 2007 U.S. Dist. LEXIS 31088, at *10. Furthermore, Green has not suffered a diminution in value because the defective brewer would have been repaired or replaced with a new brewer which would have had its own one-year warranty. See Perkins v. DaimlerChrysler Corp., 383 N.J. Super. 99, 112 (App. Div. 2006). Consequently, Plaintiff has not sufficiently pled an ascertainable loss.[5]

---

[4] Plaintiff also asserts that he has suffered an ascertainable loss because he had to use an additional K-Cup® to brew a single cup. (Compl. ¶ 2.) This Court does not address whether Plaintiff's use of an additional cup qualifies as a predicate loss under the CFA because he has not given Defendants the opportunity to cure the alleged defect.

[5] Because this Court concludes that Plaintiff has failed to sufficiently allege an ascertainable loss, it will not determine if the other elements required to state a private cause of action under the CFA have been sufficiently pled.

      b.  Breach of Implied Warranty of Merchantability [6]

New Jersey has adopted the Uniform Commercial Code to govern commercial transactions involving the purchase and sale of goods. Noble v. Porsche Cars N. Am., Inc., 694 F. Supp. 2d 333, 337 n.3 (D.N.J. 2010) (citing N.J. Stat. Ann. § 12A:2-102, et seq.). "Merchantability requires that a product conform to its ordinary and intended use." Hughes, 2011 U.S. Dist. LEXIS 79504, at *60 (internal quotation marks and citation omitted). The warranty "does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." Lieberson, 2011 U.S. Dist. LEXIS 107596, at *29 (quoting Hughes, 2011 U.S. Dist. LEXIS 79504, at *63) (internal quotation marks omitted). In other words, the warranty requires "that the article sold should be of the general kind described and reasonably fit for the general purpose for which it should have been sold." Adams v. Peter Tramontin Motor Sales, Inc., 42 N.J. Super. 313, 321 (App. Div. 1956) (emphasis added); see also N.J. Stat. Ann. § 12A:2-314(2)(c) (describing merchantable goods as those that are "fit for the ordinary purposes for which such goods are used").

Here, the "general" purpose of the brewers was to brew beverages. Although Defendants may have advertised that the machines would brew a specific amount of beverage, that alone does not transform the "general" purpose. See Liberson, 2011 U.S. Dist. LEXIS 107596, at *30-31 (concluding that a product's general purpose cannot be altered by advertising alone). Green has not alleged that his machine would not brew coffee or that it was inoperable. He simply alleges that his "brewer failed to brew correct amounts of [] coffee." (Compl. ¶ 8.) The Complaint is also devoid of any allegation that Plaintiff can no longer use his brewer. Also, Plaintiff cannot rely on the claims of other consumers to meet the pleading requirement. See

---

[6] Plaintiff alleges breach implied warranty of merchantability and fitness. (Compl. ¶ 71.) However, neither Defendants' nor Plaintiff's briefs address the implied warranty of fitness claim.

11

Luppino, 2010 U.S. Dist. LEXIS 83584, at *14.  Therefore, Green has not sufficiently alleged that his brewer was unfit for its ordinary purpose of brewing beverages at the time of purchase. See Hughes, 2011 U.S. Dist. LEXIS 79504, at *64-65 (dismissing a claim for breach of implied warranty of merchantability because although the plaintiffs alleged that their products were defective, they did not assert that their products were "inoperable or otherwise [] not in working condition.").[7]

      c. Unjust Enrichment

To state a claim for unjust enrichment, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 110 (2007) (quoting VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994)) (internal quotation marks omitted).  Essential to an unjust enrichment claim is a direct relationship between the plaintiff purchaser and the defendant or "a mistake on the part of the person conferring the benefit."  Hughes, 2011 U.S. Dist. LEXIS 79504, at *78 (quoting Fasching v. Kallinger, 211 N.J. Super. 26, 36 (App. Div. 1986)).  This is because "[w]hen consumers purchase a product from a third party, they confer a benefit on that third party, not on the manufacturer."  Synder v. Farnam Cos., Civ. No. 10-1391, 2011 U.S. Dist. LEXIS 56472, at * 26 (D.N.J. May 26, 2011).

This Court finds that Green has insufficiently pled a claim for unjust enrichment. Plaintiff alleges that he purchased a brewer.  Yet, he fails to allege if he purchased the brewer directly from Defendants.  Also, Green does not allege that he was mistaken in conferring a benefit on Defendants.  Absent an allegation of a direct relationship or a mistake, Plaintiff has insufficiently pled a claim for unjust enrichment.  See Cooper v. Samsung Elecs. Am., Inc., Civ.

---

[7] Because this Court concludes that Plaintiff has not adequately pled that his brewer was not merchantable at the time of purchase, it does not decide if Plaintiff provided adequate notice to Defendants.

12

A. No. 07-3853, 2008 U.S. Dist. LEXIS 75810, at *30-31 (D.N.J. Sept. 30, 2008), aff'd, 374 F. App'x 250 (3d Cir. 2010) (concluding that the plaintiff had insufficiently pled a claim for unjust enrichment because he did not allege that he purchased the products directly from the defendant).

### 3. Class Allegations

Even though Plaintiff has yet to move for class certification, Defendants contend that the class allegations should be dismissed. Plaintiff argues that the Court should deny Defendants' motion because it is premature. Nevertheless, a court may strike class action allegations "in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." Clark v. McDonald's Corp., 213 F.R.D. 198, 205 n.3 (D.N.J. 2003) (citing Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982)). This Court concludes that Plaintiff cannot represent the class because he does not meet the predominance requirement set forth in Fed. R. Civ. P. 23(a).

Green, the proposed class representative, must satisfy all four requirements of Fed. R. Civ. P. 23(a). Innovative Physical Therapy, Inc. v. Metlife Auto & Home, Civ. A. No. 07-5446, 2008 U.S. Dist. LEXIS 69377, at *15-16 (D.N.J. Aug. 26, 2008). These four requirements are:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Moreover, Plaintiff bears the burden of "establish[ing] that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met." Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994).

In this case, Green is seeking certification under Rule 23(b)(3). (Compl. ¶¶ 58, 62-63.) There are two requirements under this rule: predominance and superiority. See Fed. R. Civ. P. 23(b)(3); In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 310 (3d Cir. 2008). The "Court[] must undertake a 'rigorous analysis' to ensure that the putative class and its proposed representative satisfy each of the prerequisites to class certification." Innovative Physical Therapy, Inc., 2008 U.S. Dist. LEXIS 69377, *16 (citing Falcon, 457 U.S. at 161).

Common Questions of Fact do not Predominate

"For common questions of fact to predominate, they must be 'both numerically and qualitatively substantial in relation to the issues peculiar to individual class members.'" Mahtani v. Wyeth, Civ. A. No. 08-6255, 2011 U.S. Dist. LEXIS 70689, at *18 (D.N.J. June 30, 2011) (quoting In re Mercedes-Benz Antitrust Litig., 213 F.R.D. 180, 186 (D.N.J. 2003)). According to the Third Circuit,

> Predominance tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, a standard far more demanding than the commonality requirement of Rule 23(a), requiring more than a common claim. Issues common to the class must predominate over individual issues . . . . Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case. If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable.

In re Hydrogen Peroxide Antitrust Litig., 552 F.3d at 310-11 (alteration in original) (internal quotation marks and citations omitted).

1. CFA

Green's primary allegation is that Defendants misrepresented that the machines would brew a specific amount of beverage. (Compl. ¶ 2.) In order to assert a claim under the CFA, the putative class will have to establish their model series B70 brewers were defective. "Other courts in this District have found that proving a defect is a highly individualized inquiry unsuitable for class treatment." Mahtani, 2011 U.S. Dist. LEXIS 70689, at *20 (citing Laney v. Am. Standard Cos., Civ. A. No., 07-3991, 2010 U.S. Dist. LEXIS 100129 (D.N.J. Sept. 23, 2010); Payne v. FujiFilm, Civ. A. No., 07-385, 2010 U.S. Dist. LEXIS 52808 (D.N.J. May, 28, 2010); Chin v. Chrysler Corp., 182 F.R.D. 448 (D.N.J. 1998)).  In fact, the Complaint does not allege that all individuals in New Jersey who purchased the Keurig Brewing Systems have experienced the defect. Plaintiff actually acknowledges that there are members in the putative class who have not yet "suffered pump failure." (Compl. ¶ 67.) Consequently, the putative class includes individuals who do not presently have a claim against Defendants. Therefore Court concludes that common issues of fact do not predominate with the CFA claim.

2. Breach of Implied Warranty of Merchantability

Proving that Defendants breached the implied warranty of merchantability will also require this Court to perform an individualized inquiry. Not every member of the putative class has experienced a defect with the model series B70. Even if the purported defect has manifested in all of the brewers purchased within the class period, the Court will have to make individual inquiries as to the cause and extent of the defect. As a result, this claim is unsuitable for class treatment.

3.  Unjust Enrichment Claim

Individual issues predominate with this claim for the same reasons as stated above. Not all members of the putative class have experienced a defect with the model series B70. Therefore, those individuals who have not experienced the alleged defect received the benefit of the bargain. Furthermore, all of the members of the putative class did not purchase their machines directly from Defendants. Also, the putative class includes individuals who "received" the model series B70 brewers. (Id. ¶ 58; Pl.'s Opp'n Br. 1 n.2.) Hence, some of the class members do not have a direct relationship with Defendants. See Cooper, 2008 U.S. Dist. LEXIS 75810, at *29-31 (noting that a direct relationship is a pre-requisite for an unjust enrichment claim). Proving unjust enrichment in this instance will require this Court to undergo an individualized inquiry into the circumstances of each class member. As a result, this claim does not lend itself to class treatment.

**CONCLUSION**

For the reasons stated above, Defendants' Motion is GRANTED.

s/ Susan D. Wigenton
**Susan D. Wigenton, U.S.D.J.**

cc:  Madeline Cox Arleo, U.S.M.J.